UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WENDY S. WILHELM,

    Plaintiff,

  v.                                 Case No. 23-CV-439

MARTIN J. O'MALLEY,
Commissioner of Social Security[1],

    Defendant.

---

## DECISION AND ORDER

---

Wendy S. Wilhelm seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her Title II application for a period of disability and disability insurance benefits and her Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On July 16, 2020, Wilhelm filed applications for disability insurance benefits and supplemental security income alleging disabling beginning on November 1, 2019 (Tr. 15) due to scoliosis, bulging discs, arthritis of all joints, left degenerative hip, depression, and anxiety (Tr. 254). Wilhelm's claims were denied initially and upon reconsideration. (Tr. 15.) Wilhelm filed a request for a hearing, and a telephone hearing was held before Administrative Law

---

[1] The Court has changed the caption to reflect Martin J. O'Malley's recent appointment as Commissioner of Social Security.

Judge ("ALJ") Arman Rouf on May 18, 2022. (Tr. 34–66.) Wilhelm, represented by counsel, testified, as did Kimberly Eisenhuth, a vocational expert ("VE"). (*Id.*)

In a written decision issued September 7, 2022, ALJ Rouf found that Wilhelm had the following severe impairments: left ulnar neuropathy, status post transposition surgery; fibromyalgia; osteoarthritis of the left hip, status post left total arthroplasty; degenerative disc disease of the lumbar spine; and obesity. (Tr. 18.) ALJ Rouf further found that while Wilhelm had the medically determinable mental impairments of depression and anxiety, these impairments caused no more than mild limitations in any of the four broad functional areas known as the "paragraph B" criteria and the evidence did not indicate that these impairments caused more than minimal limitations in Wilhelm's ability to do basic work activities. (Tr. 19.) Thus, he concluded these impairments were non-severe. (*Id.*) ALJ Rouf found that Wilhelm did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 19–21.)

The ALJ found that Wilhelm had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: can climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; can occasionally push and pull with her left lower extremity; can frequently handle, finger, and feel with her left upper extremity; and must avoid hazards such as unprotected heights and dangerous moving machinery. (Tr. 21–26.) While ALJ Rouf found that Wilhelm was unable to perform her past relevant work as a quality control technician and nurse assistant, given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Wilhelm could perform. (Tr. 26–27.) Thus, ALJ Rouf concluded that Wilhelm

was not disabled from her alleged onset date of November 1, 2019 through the date of the decision, September 7, 2022. (Tr. 28.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Wilhelm's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## 2. Analysis

Wilhelm argues that the ALJ erred in two ways. First, she argues the ALJ failed to properly evaluate and account for her mental health impairments in her RFC. Second, she argues the ALJ failed to fully develop the record. I will address each argument in turn.

### 2.1 Evaluation of Mental Health Impairments

Wilhelm argues that ALJ Rouf failed to consider her non-severe impairments of depression and anxiety in her RFC. ALJ Rouf considered Wilhelm's depression and anxiety singly and in combination and found that they did not cause more than minimal limitations in her ability to perform basic mental work activities. (Tr. 19.) Specifically, he found that Wilhelm had no limitations in understanding, remembering, or applying information and in interacting with others; but concluded she had a mild limitation in concentration, persistence, or pace and in adapting or managing oneself. (*Id.*) In reaching this conclusion, the ALJ relied principally on Wilhelm's minimal mental health treatment records and the opinions of the state agency psychological consultants at both the initial and reconsideration levels. (*Id.*)

Wilhelm's mental health treatment is indeed minimal amongst an otherwise lengthy record. Prior to her alleged onset date of November 1, 2019, she treated with Samantha Klinkner, APNP, in February 2019, who noted that Wilhelm had a history of anxiety and depression and was taking 200 mg of sertraline daily and alprazolam as needed. (Tr. 518.) Wilhelm reported that she had not been doing well over the past few months due to her younger son's health issues, her older son's deployment to Afghanistan, and her abusive ex-boyfriend. (*Id.*) APNP Klinkner noted upon examination that Wilhelm's thoughts were well-organized and that she answered questions appropriately. (Tr. 524.) She noted "no excessive anxiety or depression." (*Id.*) On the Patient Health Questionnaire-9, Wilhelm rated her

4

difficulty concentrating on things such as reading the newspaper or watching television as "1" (*id.*), which corresponds to being bothered by the issue for several days in the past two weeks, *see* https://reference.medscape.com/calculator/271/patient-health-questionnaire-9-phq-9 (last visited Feb. 5, 2024). In March 2019, Wilhelm reported to Cathy Sukowaty, NP that she was satisfied with her current mood and had no issues with depression or anxiety. (Tr. 324.)

Wilhelm followed-up with APNP Klinkner in May 2019 and reported that her depression was doing well, but her anxiety was "not good." (Tr. 525–26.) Since her February appointment, Wilhelm had been calling more frequently for refills of alprazolam. (Tr. 526.) APNP Klinkner added 5 mg of buspirone to her doses of sertraline and alprazolam. (Tr. 529.) In June, Wilhelm reported that she noticed "small improvements" and wanted to remain on her current doses of medications. (Tr. 529–30.) By December 2019, after her alleged onset date, NP Sukowaty noted that Wilhelm was satisfied with her current mood and reported no issues with depression or anxiety. (Tr. 116.) On January 9, 2020, Wilhelm treated with APNP Klinkner, who noted that Wilhelm continued to take sertraline, lamotrigine, and buspirone and felt the combination was working well for her. (Tr. 533.) Wilhelm had not needed to fill her alprazolam prescription since July. (*Id.*) APNP Klinkner stated that Wilhelm's depression and anxiety were stable. (Tr. 536.)

On January 22, 2020 Marlene Meyer completed an Adult Function Report on behalf of Wilhelm. (Tr. 241–49.) The report noted that Wilhelm had issues with memory, completing tasks, concentration, and understanding due to her anxiety and depression and could only pay attention for 30 minutes. (Tr. 246.) She reported Wilhelm did not handle stress or changes in routine well. (Tr. 247.) On August 20, 2020, Wilhelm completed an additional Adult Function Report in which she reported difficulties with memory, completing tasks, and

concentration. (Tr. 272.) She stated that her attention was "not very good" and that she forgets such things as her and her sons' medical appointments, even if she writes herself reminder notes. (*Id.*) Wilhelm stated that while she can follow written instructions "pretty good," she struggled with spoken instructions due to needing reminders and repetition. (*Id.*) Wilhelm noted that due to her anxiety and depression she does not handle stress well and that it takes her a while to handle changes in routine. (Tr. 273.)

State agency psychological consultant Deborah Pape, Ph.D. evaluated Wilhelm's mental health impairments at the initial level in September 2020. (Tr. 75.) Dr. Pape opined that Wilhelm had no limitations in understanding, remembering, or applying information and interacting with others, but had mild limitations in concentration, persistence, or pace and adapting or managing oneself. (*Id.*) Dr. Pape based her opinion on Wilhelm's mild depression and anxiety that was stable on her current treatment; her independence in self-care and daily activities; her ability to drive; her ability to care for her autistic child; her statement that she relates well to authority and can relate appropriately at appointments; and her part-time work. (*Id.*)

Wilhelm attended therapy with Michelle Rusboldt, LCSW, three times in July and August 2021. Rusboldt noted that Wilhelm's mood appeared anxious and dysphoric with congruent affect and discussed coping strategies for various life stressors affecting her anxiety and depression. (Tr. 558–59, 566–70.) Records from November 2021 and early February 2022 from Jennifer Krause, CNP, noted no anxiety or depression and an appropriate mood and affect. (Tr. 703, 720–21.)

On February 8, 2022, state agency psychological consultant Therese Harris, Ph.D. evaluated Wilhelm's mental health impairments at the reconsideration level. (Tr. 98.) Dr.

6

Harris noted that while updated provider evidence indicated Wilhelm reported stressors in August 2021 and had an anxious and dysphoric mood, the totality of the evidence continued to support Dr. Pape's previous opinion of no limitations in understanding, remembering, or applying information and interacting with others and mild limitations in concentration, persistence, or pace and adapting or managing oneself. (*Id.*)

It is clear from ALJ Rouf's decision that he relied on the state agency consultants' opinions and the limited treatment records in finding Wilhelm's anxiety and depression non-severe. (Tr. 19.) And ALJ Rouf's finding as to the severity of Wilhelm's mental health impairments is well-supported by the record. Where ALJ Rouf's decision goes awry, however, is in his complete lack of discussion as to how these mild limitations impact Wilhelm's RFC.

When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered "severe." *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In this case, the state agency consultants appear to have credited Wilhelm's statements from her Adult Function Reports that she had difficulties with concentration and adaptation, thus opining mild limitations in those two categories instead of no limitations, as they did for the other two "paragraph B" categories. ALJ Rouf, in turn, found the state agency opinions persuasive because "they are well-supported by the limited treatment notes" and credited them by also finding mild limitations in concentration, persistence, or pace and in adapting or managing oneself. (*Id.*) ALJ Rouf then failed, however, to assess or otherwise discuss whether any RFC limitations based on these impairments were appropriate.

It is certainly true that having a mild mental limitation does not necessarily require an accommodation in the RFC. *Depies v. Saul*, No. 18-C-1794, 2019 WL 13155076, at *17 (E.D. Wis. Oct. 3, 2019). But a *mild* limitation does not equate to *no* limitation. Again, ALJ Rouf found Wilhelm's mental impairments caused *minimal* limitations—he did not find that they caused *no* limitations. Despite this finding, ALJ Rouf does not assign any limitations in Wilhelm's RFC to account for these mild limitations, nor does he explain why no accommodation is required in this case. This is reversible error. "While a mild, or even a moderate, limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) (emphasis in original) (citation omitted). ALJ Rouf's decision contains no such evaluation.

Nor does the ALJ pose any hypotheticals to the VE accounting for these mild limitations. (Tr. 63–64.) The ALJ is required to "orient the VE to the totality of a claimant's limitations" and "the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). This is even more important in a case such as Wilhelm's where the ALJ found her capable of performing less than a full range of sedentary work. (Tr. 21.) Even a less than substantial loss of the ability to perform basic mental work activities such as dealing with changes in routine "may or may not significantly erode the unskilled sedentary occupational base," which is why when "an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource." Social Security Ruling 96-9p.

8

ALJ Rouf's error in this case is not an uncommon one, as a sampling of recent cases in this circuit shows. *See, e.g.*, *Powell v. Kijakazi*, No. 21-CV-01160-JES-JEH, 2023 WL 2653358, at *5 (C.D. Ill. Mar. 27, 2023) (remanding when ALJ found claimant's anxiety and depression non-severe but "says nothing further as to why these non-severe impairments warrant no limitations at all"); *Karen A. v. Kijakazi*, No. 1:21-CV-03076-MG-SEB, 2023 WL 2643235, at *5 (S.D. Ind. Mar. 27, 2023) (remanding for failing to account for mild mental limitations resulting from the claimant's mental impairment when assessing her mental RFC); *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *4 (N.D. Ill. Apr. 8, 2022) (remanding for failure to articulate whether claimant's mild limitations in the "paragraph B" categories are consistent with the RFC analysis).

Although I do not purport to know why this error keeps reoccurring, I surmise that it has something to do with how the regulations instruct the SSA to evaluate mental impairments. Namely, the SSA does not conduct a detailed assessment of a claimant's mental RFC, i.e., complete the Mental Residual Functional Capacity Assessment ("MRFCA") form, unless a claimant's mental impairment is found to be severe but does not meet or medically equal a listing. *See* 20 C.F.R. § 404.1520a(d)(3); *Hoeppner v. Kijakazi*, No. 20-CV-582, 2021 WL 4199336, at *5 (E.D. Wis. Sept. 15, 2021). Perhaps without the benefit of an examiner's assessment of the more specific categories found in Section I ("Summary Conclusions") of the MRFCA form, the ALJ ends up giving short shrift to the mild mental limitations when assessing the RFC. But ALJs are advised that they risk reversal and remand by proceeding in this manner, as Seventh Circuit law requires the ALJ to evaluate the effects of *all* medically determinable impairments on the RFC, whether severe or non-severe. Thus, to avoid the potential for remand on this specific issue in future, ALJs must either incorporate into the

9

RFC non-exertional limitations that account for the claimant's mild mental limitations in the "paragraph B" criteria or explain why such limitations are unnecessary.

Thus, on remand, the ALJ must specifically consider how all of Wilhelm's impairments, including those that are non-severe, impact her RFC.

### 2.2 Failure to Develop the Record

Finally, Wilhelm argues ALJ Rouf failed to develop the record fully and fairly in this case. Specifically, she asserts that treatment records exist from Orthopedics and Sports Medicine BayCare, including from Dr. Jonathon Henry, Dr. Clinker, Dr. Wood, and Dr. Olson, dated April 20, 2022 and records from Bayshore Clinic for March 30, 2022 through May 26, 2022, that ALJ Rouf failed to obtain. (Docket # 13 at 17–18.) Although Wilhelm cites to multiple pieces of allegedly missing evidence, she only asserts prejudice from the absence of one record—an April 20, 2022 OT evaluation.

Specifically, Wilhelm's treating provider, Dr. Christopher Howson, provided a Medical Source Statement dated April 25, 2022 in which, rather than completing the form himself, he simply refers to an April 20, 2022 OT evaluation. (Tr. 1097–99.) ALJ Rouf found Dr. Howson's opinion unpersuasive because "it was not accompanied by any such occupational therapy evaluation and therefore does not contain a function-by-function assessment of the claimant's abilities." (Tr. 26.)[2] As such, Wilhelm argues that the lack of this record was prejudicial because the ALJ used the record's absence to discount the doctor's opinion.

---

[2] Although ALJ Rouf states that "In April 2020, Dr. Henry referred to an April 20, 2022 occupational therapy evaluation . . ." he cites to Exhibit 17F, which is a Medical Source Statement completed by Dr. Christopher Howson on April 25, 2022. I assume both the use of Dr. Henry's name and the April 2020 date are typos, especially as an April 2022 evaluation would not have existed in April 2020.

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). The duty is "enhanced" when a claimant is unrepresented, *id.*, however, it does not go away when the claimant is represented, *Gray v. Astrue*, No. 10 C 1670, 2011 WL 332540, at *5 (N.D. Ill. Jan. 28, 2011) ("This presumption does not, however, eliminate an ALJ's independent duty to reasonably develop the record."). Although having counsel does not absolve the ALJ of their duty to develop the record, "a claimant represented by counsel is presumed to have made his best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007); *see also Nicholson v. Astrue*, 341 F. App'x 248, 253 (7th Cir. 2009) ("Although we acknowledge that the ALJ bears some responsibility for the development of the record, at the same time the ALJ is entitled to assume that a claimant represented by counsel 'is making his strongest case for benefits.' An omission from the record is significant only if it is prejudicial to the claimant.") (internal citations omitted).

Wilhelm was represented during her administrative proceedings. On May 4, 2022, Wilhelm's representative, Gregory Bruno, sent a letter to ALJ Rouf stating that Dr. Howson was provided a blank Medical Source Statement to complete in March and "[s]hould it be completed, we will submit it immediately upon receipt." (Tr. 298.) On June 2, 2022, an unsigned letter (though on the letterhead of Bruno's company Brown & Brown insurance) was sent to ALJ Rouf indicating that "at this time all evidence has been submitted and we respectfully request your Honor close the record and proceed with a decision." (Tr. 302.)

Wilhelm argues that because the June 2, 2022 letter was unsigned "[w]e have no idea if any representative drafted this letter." (Docket # 18 at 12.) She argues that because ALJ Rouf was aware of these records, he should have taken steps to obtain them. Given the June 2022 letter was on the letterhead of Wilhelm's representative, it was fair for the ALJ to assume that it came from the representative. And from the May 2022 letter that was signed by Bruno, ALJ Rouf was informed that Dr. Howson had been provided the form nearly two months prior and that Bruno would provide Dr. Howson's statement "should it be completed" not "when it is completed." In other words, it was reasonable for ALJ Rouf to trust the apparent statement from Wilhelm's representative that the record was complete in June 2022.

More importantly, while Wilhelm argues that the "dismissal of an opinion that could support disability" is "the definition of prejudicial," (Docket # 18 at 13), it is entirely unclear whether the April 20, 2022 OT evaluation is the linchpin Wilhelm asserts. Although presumably having access to this record, she makes no argument as to what the record contains and how it would have supported her disability claim. Because ALJ Rouf was entitled to assume that Wilhelm's representative was making her strongest case for benefits, including when informing him that all records were produced and the record should be closed, and because Wilhelm has not demonstrated the lack of the record was prejudicial, I do not find that ALJ Rouf failed in his duty to develop a full and fair record.

## CONCLUSION

Wilhelm argues the ALJ improperly considered her mental impairments in the RFC and failed to develop the record fully and fairly. While I agree remand is warranted for the ALJ to consider how Wilhelm's mild mental health limitations impact her RFC, I find that ALJ Rouf fulfilled his duty of developing a full and fair record.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 5th day of February, 2024.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge